

**FILED**

SEP 1 4 2015

RONALD A. GUZMAN, JUDGE
UNITED STATES DISTRICT COURT

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

AUBREY BURKS

No. 14CR384-1

Judge Ronald A. Guzman

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant AUBREY BURKS, and his attorney, THOMAS LEINENWEBER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.     The superseding indictment in this case charges defendant with (1) conspiring to willfully engage in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A), and to receive, possess, and sell stolen firearms, in violation of Title 18, United States Code, Section 922(j), all in violation of Title 18, United States Code, Section 371 (Count One); (2) conspiring to possess with intent to distribute and to distribute 100 grams or more of heroin, in violation of Title 21, United States Code, Section 846 (Count Two); (3) willfully engaging in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A) (Count

Three); and (4) possession of a stolen firearm, in violation of Title 18, United States Code, Section 922(j) (Count Four).

3. Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: (1) Count One, which charges defendant with conspiring to willfully engage in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A), and to receive, possess, and sell stolen firearms, in violation of Title 18, United States Code, Section 922(j), all in violation of Title 18, United States Code, Section 371; and (2) Count Two, which charges defendant with conspiring to possess with intent to distribute and to distribute 100 grams or more of heroin, in violation of Title 21, United States Code, Section 846. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond

2

a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

      a.     With respect to Count One of the superseding indictment:

Beginning no later than in or around June 2013 and continuing until on or about April 8, 2014, defendant Aubrey Burks conspired with Kierre Waterford, Kevin Jackson, Anthony Jackson, Omar Burks, and Daniel Murphy to:

(a)    without being licensed firearms dealers, willfully engage in the business of dealing in firearms, in violation of Title 18, United States Code, Section 922(a)(1)(A); and

(b)    except as to defendant DANIEL MURPHY, receive, possess, conceal, store, barter, sell, and dispose of a stolen firearm that had traveled in interstate commerce before and after it was stolen, knowing and having reasonable cause to believe the firearm was stolen, in violation of Title 18, United States Code, Section 922(j);

in violation of Title 18, United States Code, Sections 371 and 2.

More specifically, starting sometime in or around June 2013, BURKS and his co-conspirators obtained at least dozens of firearms from various sources in Marion, Ohio, many of which BURKS knew had been stolen. BURKS and his co-conspirators, including Kierre Waterford, Kevin Jackson, and Anthony Jackson, transported the firearms to Chicago and Harvey, Illinois where they sold them to various customers.

For example, sometime in or around late 2013, at the urging of BURKS and his co-conspirators, including Kierre Waterford, Kevin Jackson, Anthony Jackson, and Omar Burks, Individual A went to a relative's residence in Marion, Ohio, and

3

stole a large safe which contained several firearms among other valuables. Individual A brought the safe to Individual B's apartment where BURKS and co-defendants Omar Burks, Anthony Jackson, Kevin Jackson and Kierre Waterford pried it open and took possession of its contents. Among the firearms found in the safe, BURKS kept a .44 caliber revolver and Kevin Jackson and Omar Burks kept several rifles. Individual A and Anthony Jackson kept other contents of the safe.

After this incident, Kevin Jackson and BURKS, who, as described below, had been selling narcotics in the Marion, Ohio, area for several months, started encouraging their narcotics customers to trade guns in exchange for narcotics, while knowing that these exchanges were illegal. BURKS and Kevin Jackson did so because they believed that, by acquiring and selling firearms in this manner, they could earn higher profits than those made from selling narcotics for cash.

BURKS also obtained several stolen firearms from Individual C and Individual D in exchange for heroin.

Sometime in early 2014, BURKS, Kevin Jackson, and Omar Burks pooled money together to buy guns at a gun show held in Marion, Ohio. BURKS accompanied Individual E to the gun show and provided the pooled funds to Individual E, who used to them to purchase four firearms at the gun show. At BURKS's direction, Individual E made several misrepresentations on the paperwork to complete the purchase of these four firearms. In particular, Individual E falsely stated that the guns were intended for Individual E's personal use despite Individual E's intention to distribute the guns to BURKS, Kevin Jackson, and Omar

4

Burks. Of the four guns Individual E purchased that day, BURKS kept a 9mm Smith & Wesson pistol, Omar Burks kept two .40 caliber pistols, and Kevin Jackson kept a Mac-style semi-automatic pistol with a suppresser.

During the course of the conspiracy, BURKS and Kierre Waterford transported firearms to the Chicago, Illinois, area on at least three occasions. BURKS and Waterford usually transported two to four firearms at a time. BURKS sold firearms to various customers in and around Chicago and Harvey, Illinois. BURKS knew that some of the individuals to whom he sold firearms could not legally possess or receive firearms, or intended to dispose of the firearms illegally. For example, BURKS sold at least two firearms to Anthony Galvan in Harvey, Illinois, knowing that Galvan intended to use or distribute the firearms unlawfully.

At times, BURKS stored guns that he intended to sell at various locations in Marion, Ohio, and Harvey, Illinois. For example, on January 30, 2014, BURKS possessed six firearms and various items of ammunition at his Harvey, Illinois, residence.

Between January and April 2014, Daniel Murphy sold approximately six firearms to BURKS. Murphy sold the firearms to BURKS in exchange for cash or a combination of cash, heroin, or forgiveness of a debt owed for heroin BURKS had provided to Murphy on credit. BURKS took the firearms he bought from Murphy to the Chicago area where BURKS sold them to various customers.

For example, sometime between January 17, 2014 and January 22, 2014, BURKS purchased a Phoenix Arms, Model HP25A .25 caliber pistol bearing serial

number 4400562 from co-defendant Daniel Murphy and sold this firearm to Anthony Galvan.

On or about March 18, 2014, BURKS and co-defendant Kierre Waterford transported firearms from Marion, Ohio, to Harvey, Illinois, where BURKS intended to sell them.

In early April 2014, BURKS purchased four guns from Daniel Murphy in exchange for a combination of cash and the forgiveness of a debt Murphy owed BURKS because BURKS had previously provided Murphy with approximately 2 grams of heroin on credit. Murphy and BURKS discussed that BURKS planned to take the guns to Chicago where BURKS planned to sell them. In anticipation of BURKS's trip to Chicago to transport guns, BURKS acquired two cars, one of which he purchased from Daniel Murphy. Murphy sold the car to BURKS knowing that BURKS intended to use the car to transport firearms from Ohio to Illinois for sale in Illinois.

On April 8, 2014, BURKS and Kierre Waterford met at a Marion, Ohio, residence with plans to transport the firearms BURKS had purchased from Murphy to Illinois. BURKS and Waterford recruited Individual B and Individual F to accompany them on the trip. BURKS, Waterford, and Individual B got into one of the two cars BURKS had purchased to use for the trip, and Individual F got into the other car with the firearms.

Starting sometime in 2013 through April 8, 2014, in total, BURKS acquired, transported, and sold at least 25 firearms. One of the firearms that was acquired in

6

furtherance of this conspiracy was a Master Piece Arms 9mm Mac-style semi-automatic pistol bearing serial number F7292 with a magazine capacity of up to 30 rounds of ammunition which contained 19 live rounds on August 17, 2013.

      b.      With respect to Count Two of the superseding indictment:

Beginning no later than in or around 2013 and continuing until on or about April 8, 2014, BURKS conspired with others, including co-defendants Kierre Waterford, Kevin Jackson, Anthony Jackson, Omar Burks and Daniel Murphy, to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 846.

More specifically, starting sometime in the winter of 2013, BURKS started selling heroin and crack cocaine in the Marion, Ohio, area with co-defendants Kevin Jackson, Omar Burks, Kierre Waterford, Anthony Jackson and Individual A and started supplying heroin to Daniel Murphy, who also distributed heroin in the Marion, Ohio, area.

For a few months in 2013, BURKS, Kevin Jackson, Omar Burks, and Individual A sold narcotics out of a residence of one of their heroin customers on Columbia Street in Marion, Ohio. BURKS stayed at and sold drugs out of that apartment for two or three weeks at a time. Occasionally, BURKS returned to the Harvey, Illinois area to replenish his supply of heroin. At times, BURKS, Kevin Jackson, Omar Burks and Individual A shared phones that they used to facilitate

their drug trafficking business. Kevin Jackson and Individual A set up security cameras at this apartment so BURKS, Kevin Jackson, Individual A and others who sold drugs there could see who was approaching the front door, before they let them in.

Starting sometime in or around August or September 2013, BURKS, along with Kevin Jackson, Omar Burks, Kierre Waterford and Anthony Jackson, started staying at and selling heroin and crack cocaine out of the residence of Individual G, another heroin customer, in an apartment complex called "the Flats." Individual G allowed BURKS and the others to use the apartment to sell narcotics in exchange for a continuous supply of heroin to Individual G.

BURKS had recruited Waterford to join the narcotics trafficking efforts in Ohio. BURKS and Kevin Jackson recruited Anthony Jackson to join the narcotics trafficking. Both BURKS and Kevin Jackson supplied narcotics to Anthony Jackson, at times, on credit terms and recruited Anthony Jackson to drive when BURKS and the others returned to the Chicago area to replenish their narcotics supply.

From in or around November or December 2013, until in or around early April 2013, BURKS, Omar Burks, Waterford, Kevin Jackson, Anthony Jackson and Individual A sold heroin and crack cocaine out of the residence of Individual B, another heroin user. Individual B allowed BURKS and the others to use this apartment to store drugs and guns, to package drugs, and to serve drugs in exchange for a continuous supply of heroin to Individual B.

Before allowing customers entry to the apartment to purchase narcotics, BURKS and his co-conspirators required each individual who approached to be examined with a handheld device that was purportedly capable of detecting hidden recording devices. BURKS acquired this device from someone in Chicago, Illinois, and allowed the others to use it for security purposes. Individual A also set up a large wooden board adjacent to the front door to this apartment as a security measure because they (BURKS, Individual A, and BURKS's co-conspirators) believed this barrier made it more difficult for police or potential robbers to kick the door in. BURKS and his co-conspirators also used a multi-camera video surveillance system as an additional security measure that allowed them to monitor people who were seeking entry to the apartment to purchase drugs. At times, BURKS carried firearms and possessed firearms to protect himself, his drug proceeds, and his drug inventory.

In addition to selling drugs out of Individual B's apartment, BURKS, Kevin Jackson, Omar Burks, Waterford, Anthony Jackson and Individual A frequently used the apartment to prepare and package heroin and crack cocaine for sale. During the several months that BURKS sold narcotics out of Individual B's apartment, BURKS sold as much as 100 grams of heroin every one to two weeks. Based on BURKS's observations of the customers served and the quantity of drugs being packaged by his co-conspirators, during the course of the conspiracy Kevin Jackson sold as much as 70 grams of heroin every one to two weeks, and Omar

9

Burks, Kierre Waterford, and Anthony Jackson each sold as much as 40 grams of heroin every one to two weeks.

BURKS supplied co-defendant Daniel Murphy with heroin that Murphy sold to his own customers out of at least two locations in Marion, Ohio. BURKS frequently "fronted" heroin to Murphy.

Individual A occasionally served narcotics to customers at the direction of BURKS, and was one of three individuals who served narcotics to customers at Kevin Jackson's direction. Eventually, Individual A distributed and sold heroin he obtained from BURKS and Kevin Jackson to his own clientele.

The amount of heroin BURKS personally distributed and the amount of heroin that was distributed by others that was reasonably foreseeable to BURKS totaled at least 400 grams.

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a. Count One carries a maximum sentence of 5 years' imprisonment. Count One also carries a maximum fine of $250,000. Defendant

further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

   b.    Count Two carries a maximum sentence of 40 years' imprisonment, and a statutory mandatory minimum sentence of 5 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count Two also carries a maximum fine of $5,000,000. Defendant further understands that with respect to Count Two, the judge also must impose a term of supervised release of at least four years, and up to any number of years, including life.

   c.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

   d.    Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 45 years' imprisonment, and the minimum sentence is 5 years' imprisonment. In addition, defendant is subject to a total maximum fine of $5,250,000, a period of supervised release, and special assessments totaling $200.

### Sentencing Guidelines Calculations

   9.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

b. **Offense Level Calculations**.

Count One

i. Pursuant to Guideline § 2K2.1(a)(4)(B), the base offense level is 20, because the offense involved at least one semiautomatic firearm that is capable of accepting a large capacity magazine, namely, a Master Piece Arms 9mm Mac-style semi-automatic pistol bearing serial number F7292 with a magazine capacity of up to 30 rounds of ammunition.

ii. Pursuant to § 2K2.1(b)(1)(C), the offense level is increased by 6 because the offense involved between 25 and 99 firearms.

iii. Pursuant to § 2K2.1(b)(4)(A), the offense level is increased by 2 because the offense involved a stolen firearm.

iv. Pursuant to § 2K2.1(b)(5), the offense level is increased by 4 because defendant engaged in the trafficking of firearms.

v. Pursuant to § 2K2.1(b)(6)(B), the offense level is increased by 4 because defendant possessed the firearms in connection with another felony

12

offense, namely, the distribution of heroin as charged in Count Two of the superseding indictment.

      vi.      Pursuant to § 3B1.1(b), the offense level is increased by 3 because defendant was a manager or supervisor and the criminal activity involved five or more participants.

      vii.      The total offense level for Count One is 39.

#### Count Two

      viii.      Pursuant to Guideline § 2D1.1(c)(6), the base offense level is 26 because the offense involved more than 400 grams of heroin.

      ix.      Pursuant to Guideline § 2D1.1(b)(1), the offense level is increased by 2 because a dangerous weapon was possessed.

      x.      Pursuant to Guideline § 2D1.1(b)(12), the offense level is increased by 2 because defendant maintained a premises for the purpose of manufacturing and distributing a controlled substance, namely, Individual G's residence on Chestnut in Marion, Ohio.

      xi.      Pursuant to Guideline § 3B1.1(b), the offense level is increased by 3 because defendant was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive.

      xii.      The total offense level for Count Two is 33.

#### Combined Offense Level

      xiii.      Pursuant to Guideline § 3D1.2(c), Count One and Count Two group together because the counts involve the same victim and two or more

acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

                xiv.        Pursuant to Guideline § 3D1.4(a), Count One counts as one unit because it has the highest offense level (39). Pursuant to Guideline § 3D1.4(b), Count Two counts as an additional one-half unit because it is between 5 and 8 levels less serious than Count One.

                xv.        Pursuant to Guideline § 3D1.4(a), one and one-half units corresponds to the addition of one offense level, providing for a combined offense of 40.

Acceptance of responsibility

                xvi.        Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

                xvii.        In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court

14

determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 3 and defendant's criminal history category is II:

      i.     On December 21, 2009, defendant was convicted of misdemeanor aggravated assault in the Circuit Court of Cook County and was sentenced to 5 days in jail and 12 months of conditional discharge. Pursuant to Guideline § 4A1.1(c), defendant receives 1 criminal history point for this conviction.

      ii.     On April 14, 2010, defendant was convicted of manufacturing/delivery of cannabis in the Circuit Court of Cook County in Case number 10C6602040 and was sentenced to Probation. Pursuant to Guideline § 4A1.1(c), defendant receives 1 criminal history point for this conviction.

      iii.     On June 28, 2011, defendant was convicted of resisting a peace officer and was sentenced to 12 months of conditional discharge in the Circuit Court of Cook County in case number 201160027860. Pursuant to Guideline § 4A1.1(c), defendant receives 1 criminal history point for this conviction.

      d.     **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 37, which, when combined with the anticipated criminal history category of

II, results in an anticipated advisory sentencing guidelines range of 235 to 293 months' imprisonment, in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 5 years' imprisonment.

e.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement

16

will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

11.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable guideline range, and shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable guideline range. The government shall not make a motion pursuant to 18 U.S.C. § 3553(e). Defendant shall be free to recommend any sentence, subject to the

statutory minimum. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

13.     If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1 and 18 U.S.C. § 3553(e).

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment, as well as the indictment as to defendant.

## Forfeiture

17.    The superseding indictment charges that defendant is liable to the United States for approximately $4,215, which funds are subject to forfeiture pursuant to Title 21, United States Code, Section 853 because those funds were involved in the violations alleged in Count One of the superseding indictment. By entry of a guilty plea to Count One of the superseding indictment, defendant acknowledges that the funds identified above are subject to forfeiture.

18.    The superseding indictment charges that defendant has subjected the following personal property to forfeiture pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c):

(a) Six Firearms and various items of ammunition recovered on January 30, 2014 from BURKS's Harvey, Illinois residence, including:

- o   a MasterPiece Arms .45 caliber semi-automatic pistol bearing serial number A8485;

- o   a Taurus .44 caliber revolver bearing serial number TK-852410;

- o   a Ruger Super Redhawk .44 caliber revolver bearing serial number 55003810;

- o   a Wasir 7.62 caliber rifle bearing serial number 1-39279-2003;

- o   a Hi-Point 9mm rifle bearing serial number B16777; and

- o   a Saiga 410 caliber shotgun bearing serial number 93-1201984; and

(b) Four firearms recovered by Marion Police on April 8, 2014, including:

- o   a Colt M4 .22 caliber rifle bearing serial number BP021578;

- o a Ruger .357 caliber revolver bearing serial number 174-65430;

- o a Ruger Blackhawk .44 caliber revolver bearing serial number 85-98200; and

- o a Colt .223 caliber rifle bearing serial number CCH032508.

By entry of a guilty plea to Count One of the superseding indictment, defendant acknowledges that the property identified above is subject to forfeiture.

19.     Defendant agrees to the entry of a forfeiture judgment in the amount of $4,215, and against the property identified above, in that these funds and property are subject to forfeiture. Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the above-described funds and property and further agrees to the seizure of these funds and property so that these funds and property may be disposed of according to law.

20.     Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

21.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14CR384.

22.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

23.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.      **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.    With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

c.     **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which

the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

24.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

25.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

26.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's

Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

27.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

28.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

30. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

31. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

32. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

33.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

34.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

35.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: ___9/14/15___


ZACHARY T. FARDON
United States Attorney

TIMOTHY J. STORINO
Assistant U.S. Attorney

AUBREY BURKS
Defendant

THOMAS LEINENWEBER
Attorney for Defendant