IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 14 CR 38 |
| | ) | |
| v. | ) | Hon. Ronald A. Guzman |
| | ) | |
| AUBREY BURKS, | ) | |
| | ) | |

DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION
REPORT

Defendant AUBREY BURKS, by and through his attorney, Quinn A. Michaelis,

submits the following objections to the presentence investigation report.

I.      Calculation of the Offense Level

A.  COUNT 1

a.   Calculation of the base offense level for Count 1.

The PSR calculates Mr. Burks' offense level as 22, because the offense

involved a semiautomatic firearm capable of accepting a large capacity magazine,

and because the defendant committed the instant offense subsequent to sustaining

a felony conviction for a serious drug offense, namely Case no. 10C66020401.  PSR

at 41.  The previous case on which the offense level is based was a 2010 conviction

for Manufacture/Delivery of Cannabis.  Under U.S.S.G. §2K2.1 application note 10,

only convictions that receive criminal history points under §4A1.1(a),(b), or (c)

should be used for determining the proper base offense level.  Pursuant to the

criminal history calculation rules, Under U.S.S.G. §4A1.2(j), expunged convictions

"are not counted, but may be considered under §4A1.3 (departures based on inadequacy of Criminal History Category (Policy Statement)). U.S.S.G. §4A1.2(j). As of today, Mr. Burks' convictions for the manufacture and delivery of cannabis is still countable for purposes of both his criminal history calculation and his offense level.

On May 26, 2019, House Bill 1436 was signed into law, legalizing the recreational use of marijuana, beginning January 1, 2019. The law also contains provisions for automatic expungements and pardons of minor cannabis offenses (defined as the possession or manufacture, delivery, or possession with intent to deliver of not more than 30 grams of a substance containing cannabis. 20 ILCs 2630/5.2(a)(1)(G-5)) subject to the following conditions:

> (ii) the conviction…did not include a penalty enhancement under Section 7 of the Cannabis Control Act[1]; and
> (iii) the conviction…is not associated with an arrest, conviction or other disposition for a violent crime as defined in subsection (c) of Section 3 of the Right of Crime Victims and Witness Act[2].

---

[1] Pursuant to 720 ILCS 550/7 (The Cannabis Control Act), any person who is at least 18 years of age who…deliver[s] cannabis to a person under 18 years of age who is at least 3 years his junior may be sentenced to imprisonment for a term of up to twice the maximum term otherwise authorized by Section 5.

[2] Pursuant to 725 ILCS 120/3(c): "'Violent Crime' means: (1) any felony in which force or threat of force was used against the victim; (2) any offense involving sexual exploitation, sexual conduct, or sexual penetration; (3) a violation of 11-20.1 [child pornography], 11.20.1B, 11-20.3, 11-23[posting of identifying or graphic information on a pornographic internet site or possessing graphic information with pornographic material], or 11-23.5 [non-consensual dissemination of private sexual images] of the Criminal Code of 1961 or the Criminal Code of 2012; (4) domestic battery or stalking; (5) violation of section 9-3 of the criminal code of 1961 or the Criminal Code of 20102 [approaching, contacting, residing with, or communicating with a child within certain places by child sex offenders prohibited], or 11-501 of the Illinois Vehicle Code, or a similar provision of a local ordinance [driving under the influence of alcohol or other drug(s) etc.], if the crime violation resulted in personal injury or death."

The driving force behind the automatic expungement and pardon provisions of the legalization bill was to rectify the past failures of the war on drugs and its disproportionate impact on communities of color. Under the new law, expungement of convictions under 30 grams of marijuana are automatic, while convictions for amounts between 30 grams and 500 grams are discretionary.

Mr. Burks' qualifying conviction under U.S.S.G. §2K2.1(a)(3) is from 2010 conviction for manufacture/delivery of cannabis, in violation of 720 ILCS 550/5(c), which criminalizes the manufacture or delivery of between 10 and 30 grams of cannabis. This offense will be automatically expunged after House Bill 1436 goes into effect on January 1, 2020. As such, because this offense will no longer be countable for criminal history purposes once it is expunged, it will also no longer qualify as a controlled substance offense for purposes of calculating the offense level under U.S.S.G. §2k2.1(a)(3). The proper base offense level will therefore be 20, pursuant to U.S.S.G. §2K2.1(a)(4)(B), because the offense involved a semiautomatic firearm capable of accepting a large capacity magazine.

### b. Enhancement for number of guns.

The PSR enhances Mr. Burks' sentence under Count 1 by six levels pursuant to U.S.S.G. §2k2.1(b)(1)(C) because the offense involved between 25 and 99 firearms. (PSR at 42). According to the Offense Conduct section of the PSR, the defendant is specifically responsible for the following firearms:

| ¶ | Date | Event | Gun type |
|---|------|-------|----------|
| 17 | 12/2/2013 | Stolen gun safe | .44 Super Red Hawk revolver* |

| 18 | Approx. 12/2013 | Stolen guns used to purchase heroin | .380 Bryco pistol |
|---|---|---|---|
| 18 | 12/21/2013 | Guns stolen from Charles Hudgel | .45 pistol with grim reaper grip pistol<br>9mm Hi-point rifle |
| 19 | 9/2014 | Purchase from gun show | 9mm Smith and Wesson pistol |
| 21 | 1/30/2014 | Guns found pursuant to search of Harvey Illinois residence | .45 Master Piece Arms pistol<br>.44 Taurus revolver<br>7.62 Wasir rifle<br>9mm Hi-Point 995 rifle<br>410-gauge Izhmash Saiga shotgun |
| 22 | 1/2014 | Traded for heroin with Daniel Murphy (admitted to in Daniel Murphy's plea agreement) | .25 Phoenix Arms pistol<br>9mm Ruger pistol |
| 22 | 2/2014 | Traded for heroin with Daniel Murphy (admitted to in Daniel Murphy's plea agreement) | .45 Hi-Point Semi-Auto rifle |
| 23 | Early 4/2014 | Traded for heroin and forgiveness of drug debt owed from Daniel Murphy (admitted to in Daniel Murphy's plea agreement) | .44 Ruger Super Blackhawk revolver<br>.357 Ruger revolver<br>Rifle<br>Rifle |
| | | | |
| | | **TOTAL GUNS:** | 17 |

Pursuant to U.S.S.G. §2K2.1(b)(1)(B), because the offense involved between 8 and 24 firearms, the offense level is enhanced only by four levels.

### c. Stolen firearms enhancement

Mr. Burks further objects to the application of the 2-level enhancement under U.S.S.G. §2K2.1(b)(4)(A). Pursuant to application note 8, for stolen firearm offenses, (Mr. Burks plead guilty to Count 1, conspiracy to sell firearms without a license and possession of stolen firearms), the stolen firearm enhancement is not

applied because the base offense level takes into account that the firearm or ammunition was stolen.

### d.   Resulting adjusted offense level for count 1:

The resulting offense level for count one is therefore:

| | |
|---|---|
| Base offense level: | 20 |
| 8-24 firearms | +4 |
| Firearms trafficking | +4 |
| Connection to another | |
|     Felony offense | +4 |
| Manager/supervisor | |
|     Role | +3 |
| ------------------------------------------------ | |
| Total: | 35 |

## B.  COUNT 2

### a.   Base offense level for Count 2.

The PSR determines that the base offense level for Count 2, an offense involving 400 grams of heroin, but less than 700 grams of heroin, is 26. The offense is then increased by 2 levels pursuant to U.S.S.G. §2D1.1, because the firearm was possessed in connection with this offense.

### b.   Objection to enhancement for maintaining a premises for purpose of manufacturing or distributing a controlled substance.

The PSR assigns two levels under count to pursuant to U.S.S.G. § 2D1.1(b)(12) because "the defendant maintained a premises for the purpose of manufacturing and delivering a controlled substance." (PSR at 54). According to the PSR, "the defendant and his co-conspirators used Individual B's apartment to package narcotics, and from which to sell said narcotics. Further, the defendant

5

controlled who gained entry to the property by "wanding" customers, having surveillance cameras, and setting up a barrier."

Under 2D1.1 application note 28,

> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.
>
> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

According to one of the individuals interviewed during the investigation of this case, co-defendant Kevin Jackson moved his operation to an apartment on the corner of Windsor and Columbia Streets. This individual indicated that it was Jackson who had installed video cameras, and that it was Jackson who also installed the board at the entryway of the apartment to prevent the door from being kicked in. This individual identifies Mr. Burks only as a person working out of the apartment controlled by Kevin Jackson. Furthermore, according to Kevin Jackson's plea agreement, Kevin Jackson admitted that he set up the security cameras at one of the apartments used to distribute heroin.

A second individual, who allowed the defendants to distribute heroin from her apartment in the "flats," said that "Ray" (AKA Kevin Jackson) approached her about using her apartment for distribution. That individual further stated that

although Mr. Burks lived in the apartment while the defendants distributed heroin from that location, it was "Ray" who arrived every morning to wake Mr. Burks, and then the defendants would begin their distribution activities.

## II.     OBJECTIONS TO CRIMINAL HISTORY CALCULATIONS

### a.    Objections Based on the Cannabis Convictions that will be Expunged

Mr. Burks objects to the assessment of one criminal history point for his 2010 conviction for the manufacture and delivery of cannabis (PSR at 70). As discussed further above, this conviction arose from a violation of 720 ILCS 550/5(c), which will be automatically expunged at some point after January 1, 2020.

An additional one point was assessed for his 2012 conviction for the possession of cannabis, in violation of 720 ILCS 50/4 (PSR at 72), criminalizing the possession of not more than 10 grams of cannabis. This conviction will also be automatically expunged under the cannabis legalization law taking effect January 1, 2020.

### b.    Objection to Inclusion of Conviction for Visiting a Common Nuisance.

Mr. Burks further objects to the inclusion of two criminal history points for his 2012 conviction for visiting a common nuisance. (PSR at 73). Under U.S.S.G. §4A1.2(c)(2), certain "prior offenses and offenses similar to them, by whatever name they are known, are never counted." Among the list of excluded offenses is loitering. *Id.* In *United States v. Lock*, 466 F.3d 594 (7th Cir. 2006), the Seventh Circuit determined what types of offenses may be included under the definition of

7

"loitering" and thus excluded from counting for criminal history purposes. The Court analyzed Milwaukee's Loitering-Illegal Drug Activity offense, which criminalized loitering with an intent to engage in illegal drug activity. *Id.* at 596. First attempting to define loitering, the Court looked to the Black's Law Dictionary definition of loitering which defines loitering as "remaining 'in a certain place... for no apparent reason." *Id.* at 598. The Court next turned to the Model Penal Code's definition, which "refers to behavior that is 'not usual for law abiding individuals." *Id.* Relying on *City of Chicago v. Morales*, 527 U.S. 41 (1999), the Court held that loitering laws that specify an unlawful purpose are still primarily concerned with prohibiting loitering, and should therefore be excluded from criminal history scores. *Id.* at 602.

Mr. Burks plead guilty to visiting a common nuisance, in violation of IC 35-48-4-13(a), defined as "a person who knowingly or intentionally visits a building, structure, vehicle, or other place that is used by any person to unlawfully use a controlled substance commits visit a common nuisance." Under the plain language of the Indiana statute, it does not appear that to be found guilty, an individual has to visit a "drug house" for the purpose of using a controlled substance himself, simply that he visit the building where *any* person is unlawfully using a controlled substance. In fact, as further clarified in the PSR, one can be charged with this offense simply be being "located in a 'drug house' at the time it is raided." (PSR at 73). This offense clearly falls within the Model Penal Code's definition of loitering, that is remaining in a place to engage in activity that is not usual for law-abiding

citizens. As such, this offense is similar to the Milwaukee loitering-illegal drug activity offense that was specifically excluded from counting for criminal history purposes under *United States v. Lock*.

According to the PSR at 80, Mr. Burks committed the instant offense while under a criminal justice sentence, namely the visiting a common nuisance charge discussed above. Pursuant to U.S.S.G. § 4A1.1, application note 4, for the purposes of implying the enhancement under §4A1.1(d), "a 'criminal justice sentence' means a sentence countable under §4A1.2." As discussed above, because the conviction for visiting a common nuisance is not a countable offense, the two additional points assessed under §4A1.1(d) should not be included in Mr. Burks' criminal history calculation.

### c. Criminal History Calculation

In total, Mr. Burks criminal history score is three, placing him in Criminal History Category II.

## III.    The Sentencing Range.

Based on the adjusted offense level for Count 1, with a three-level reduction for acceptance of responsibility, the total offense level of 32, and a criminal history category of II, the recommended guideline range is 135-168 months imprisonment.

WHEREFORE, for the foregoing reasons, AUBREY BURKS respectfully requests that this Court find a sentencing range of 135-168 months based on the above-mentioned objections and arguments.

Respectfully submitted,

s/Quinn A. Michaelis

_____
Quinn A. Michaelis
Attorney for AUBREY BURKS

73 W. Monroe, Suite 106
Chicago, IL 60603
(312)714-6920

## Certificate of Service

The undersigned attorney certifies that she caused a true and correct copy of the attached OBJECTIONS TO THE PRESENTENCE REPORT to be served upon the government by electronically serving it through the CM/ECF system on September 16, 2019

s/  Quinn A. Michaelis
Quinn A. Michaelis
Attorney for AUBREY BURKS
73 W. Monroe #106
Chicago, Illinois 60601
(312)714-6920